IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.:  3:11-246-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| LUCILA MARTINEZ-VIVANCO | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motions for a reduction in her sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 704, 710).[1] Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with her current medical problems, and her desire to care for her elderly mother in Mexico, constitute extraordinary and compelling reasons for her immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.

---

[1] The defendant's first motion (ECF No. 704), was filed by her husband/co-defendant, Guadalberto Morales-Salazar. He notes that the defendant could not petition the court because of the situation at FCI Waseca and the fact that the defendant recently tested positive for COVID-19. Mr. Morales-Salazar contends that pursuant to 28 U.S.C. § 3851(d)(2)(B), a family member, partner, or counsel for an incarcerated individual may file on a defendant's behalf if said individual is physically or mentally unable to file his or her own request for compassionate release. The court has considered this motion, as well as the motion later filed by the defendant herself (ECF No. 710).

1

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motions are respectfully denied.

## PROCEDURAL HISTORY

The defendant was identified as a leader and organizer of a marijuana drug trafficking organization that spanned the Southeastern portion of the United States from Texas to South Carolina. The organization recruited and relied upon commercial truck drivers to transport the marijuana across the United States. The defendant was responsible for overseeing the offloading of marijuana at warehouses once the marijuana arrived in Columbia. She also weighed bales of marijuana that were shipped here and facilitated the distribution of marijuana to customers. Additionally, she recruited her 15-year-old sister to deliver drugs and drug proceeds. She rented stash houses to store marijuana and proceeds from drug distributions. At one point, a search of the stash houses maintained by the defendant resulted in the seizure of nearly $1 million in cash.

The Presentence Report (PSR) (ECF No. 565) prepared by the United States Probation Office determined that the defendant's base offense level was 34. Ultimately, the defendant was held responsible for more than 8,500 kilograms of marijuana. She received sentencing enhancements for possessing a firearm in furtherance of a drug trafficking offense, maintaining a stash house, using a minor for drug distribution, and acting as a manager or supervisor of a drug operation. Her total offense level was 42. With a criminal history

category of I, the Guideline range for imprisonment was 360 months to life.

The defendant pleaded guilty pursuant to a written plea agreement (ECF No. 319) to Count 1, conspiring to distribute and possession with intent to distribute 100 grams or more of marijuana, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and Count 11, conspiring to launder drug proceeds, in violation of 18 U.S.C. § 1956(h).

In September 2013, this court granted the government's oral motion for a downward departure and sentenced the defendant to a custodial term of 240 months, consisting of 240 months as to Count 1, and 240 months as to Count 11, those terms to run concurrently. The term of supervised release was set at 5 years.

The defendant's sentence was later reduced to 188 months as a result of this court's application of retroactive Amendment 782 to the United States Sentencing Guidelines (USSG) to the defendant's sentence.

The defendant did not appeal her conviction or sentence. She did, however, file an unsuccessful challenge to her conviction by way of a motion pursuant to 28 U.S.C. § 2255.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is

when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first

finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence

5

reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, __ F.4th __, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021).

As it appears to this court that the defendant has fully exhausted her administrative remedies, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In her motions (ECF Nos. 704, 710), the defendant contends that her migraine headache episodes might exacerbate her exposure to the COVID-19 virus. In the first motion (ECF No. 704), the defendant's husband suggests that the defendant also experiences shortness of breath and "severe chest pressure." The defendant also contends that she should be immediately released so that she can return to Mexico, her native county, to care for her aging mother. The defendant is not a legal resident, authorized visitor, or citizen of the United States.

The government has responded and opposes the defendant's motion. The government correctly points out that the original PSR filed in this case in 2013 reveals that the defendant has nine siblings. In her current motion before this court, the defendant makes no mention of this fact and does not explain why any of her nine siblings are not able to care for their aging mother. Moreover, the migraine headaches which she says she experiences do not place her at an increased risk of danger from a COVID-19 infection.

Although the defendant's original PSR did not document migraine headache problems, various entries in the BOP's medical records note complaints of migraines. However, this condition alone, even in the COVID pandemic, is not a serious medical condition justifying immediate release. The other medical conditions mentioned by the defendant's husband are not supported in her medical records. In fact, on several occasions, the defendant herself denied having shortness of breath or chest pains. (See ECF No. 763).

The medical records also reveal that the defendant has already had COVID-19 and that she has fully recovered. The medical records reflect that the defendant declined the COVID vaccination while incarcerated.

Finally, the defendant argues that she has employment available if she is immediately released. She also points out that she faces immediate deportation. Employment opportunities in this era of low unemployment is not a significant factor. Also, the court was aware of the deportation issue when it imposed the original below-Guidelines sentence and later reduced the defendant's sentence under Amendment 782. The court thus rejects these two additional arguments.

*Post-Sentencing Conduct*

The defendant states that she has had two minor incident reports during her period of incarceration due to a failure to report to a callout and an unauthorized are shot from a scheduling conflict. She has completed several Adult Continuing Education (ACE) classes and has made significant strides in her efforts to improve her communication and English language skills. She received her GED in 2016. She has also worked with UNICOR as a sewer and the laundry department.

The government acknowledges that the defendant has successfully completed multiple programs while incarcerated at the BOP and the amount of time she has already served on her 188-month sentence is not insignificant. The government also acknowledges the defendant's lack of criminal history. The defendant is scheduled for release on June 4, 2024.

9

CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met her burden of establishing that she has an extraordinary and compelling reason such that she is eligible for release under § 3582(c)(1)(A). As the court finds no extraordinary and compelling reason, it is not necessary for the court to address the § 3553(a) factors.

Accordingly, the defendant's motions (ECF Nos. 704, 710) are respectfully denied.[2]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.* (signature)

December 21, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[2] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")