IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:11-246-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| LUCILLA MARTINEZ-VIVANCO | ) | |
| | ) | |

     This matter is before the court on the defendant's second *pro se* motion for a reduction in her sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 784).[1]  Seeking compassionate release, and raising many of the same issues set forth in her first motion, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with her current medical problems, and her post-sentencing rehabilitation constitute extraordinary and compelling reasons for her immediate release.   She also claims that she is not receiving timely care for her medical ailments at the BOP and she appears to allege some type of sentencing disparity.

     The government has responded in opposition, arguing that the defendant has not shown any extraordinary and compelling reasons for release.  Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.

---

[1] The defendant filed additional supporting documents to her motion for compassionate release (ECF Nos. 787, 788) which this court has carefully considered as well.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## PROCEDURAL HISTORY

The defendant was identified as a leader and organizer of a marijuana drug trafficking organization that spanned the Southeastern portion of the United States from Texas to South Carolina. The organization recruited and relied upon commercial truck drivers to transport the marijuana across the United States. The defendant was responsible for overseeing the offloading of marijuana at warehouses once the marijuana arrived in Columbia. She also weighed bales of marijuana that were shipped here and facilitated the distribution of marijuana to customers. Additionally, she recruited her 15-year-old sister to deliver drugs and drug proceeds. She rented stash houses to store marijuana and proceeds from drug distributions. At one point, a search of the stash houses maintained by the defendant resulted in the seizure of nearly $1 million in cash.

The Presentence Report (PSR) (ECF No. 565) prepared by the United States Probation Office determined that the defendant's base offense level was 34. Ultimately, the defendant was held responsible for more than 8,500 kilograms of marijuana. She received sentencing enhancements for possessing a firearm in furtherance of a drug trafficking offense, maintaining a stash house, using a minor for drug distribution, and acting as a manager or supervisor of a drug operation. Her total offense level was 42. With a criminal history

category of I, the Guideline range for imprisonment was 360 months to life.

The defendant pleaded guilty pursuant to a written plea agreement (ECF No. 319) to Count 1, conspiring to distribute and possession with intent to distribute 100 grams or more of marijuana, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and Count 11, conspiring to launder drug proceeds, in violation of 18 U.S.C. § 1956(h).

In September 2013, this court granted the government's oral motion for a downward departure and sentenced the defendant to a custodial term of 240 months, consisting of 240 months as to Count 1, and 240 months as to Count 11, those terms to run concurrently. The term of supervised release was set at 5 years.

The defendant's sentence was later reduced to 188 months as a result of this court's application of retroactive Amendment 782 of the United States Sentencing Guidelines (USSG) to the defendant's sentence.

The defendant did not appeal her conviction or sentence.   She did, however, file an unsuccessful challenge to her conviction by way of a motion pursuant to 28 U.S.C. § 2255.

As noted previously, this is the defendant's second motion for compassionate release.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow

exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law.   Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety.  The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so.  The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.    In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification.  28 U.S.C. § 994(t).  Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps.  *See United States v. High*, 997 F.3d 181,

185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, __ F.4th __, 2021 WL 4888393, at *3

6

(4th Cir. Oct. 20, 2021).

The government concedes that the defendant has fully exhausted her administrative remedies, thus this court will proceed to review the matter on the merits.

DISCUSSION

I. *Defendant's Medical Conditions* & *Alleged Lack of Medical Care*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In her motion (ECF No. 784), the defendant claims to suffer from migraines, sciatica, back pain and kidney issues, along with the threat of the COVID-19 pandemic. She also argues that the BOP officials are failing to provide her proper medical care for her alleged conditions.

As the government points out, however, the defendant's medical records squarely contradict her claim that the BOP is not providing her with medical treatment while incarcerated. These medical records demonstrate that the medical staff routinely meet with the defendant, diagnose medical conditions that may have arisen, and provide treatment for such conditions. Moreover, these medical conditions identified, although serious, are not such that would justify an order of compassionate release.

The defendant is designated by the BOP as medical Care Level I. Inmates who are classified as Level I are "less than 70 years of age, generally healthy, and may have limited medical needs that may be easily managed by clinician evaluations every 6 to 12 months."

Regarding the ongoing COVID-19 pandemic, the government observes that the defendant was offered, and refused, a vaccine, and then contracted COVID and successfully recovered from it without significant consequences.

Standing alone, and even in conjunction with the defendant's medical conditions, the COVID pandemic does not justify compassionate release at this time.

## II. *Alleged Sentencing Disparity*

Next, the defendant contends that her release is justified by an alleged sentencing disparity. She points out that she was in her mid 20s at the time of offense in question, that she lacks any criminal history, and that her conduct while serving her sentence at the BOP has been exemplary. Importantly, she does not make the argument that her sentence today would be significantly different from the sentence imposed in 2012 as a result of intervening changes in sentencing law. Nor does she assert that her sentence is widely disparate from those imposed on similarly situated defendants.

After considering all the arguments advanced by the defendant, this court concludes that she has not demonstrated an extraordinary and compelling reason for compassionate release.

## III. *Post-Sentencing Conduct*

The defendant states that she has had clear conduct and been a model inmate.[2] She also states that she is always working and assisting other inmates with translations. She has completed 90 percent of her statutory time served, has received her GED, learned English and completed more than 45 classes.

The government acknowledges that the defendant has successfully completed multiple programs while incarcerated at the BOP and the amount of time she has already served on

---

[2] This court's order denying the defendant's first motion for compassionate release noted that the defendant has had two minor incident reports during her period of incarceration due to a failure to report to a callout and an unauthorized shot from a scheduling conflict.

her 188-month sentence is not insignificant. The government also acknowledges the defendant's lack of criminal history. The government notes that she will be subject to deportation after her release from the BOP which is scheduled for June 4, 2024.

## CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met her burden of establishing that she has an extraordinary and compelling reason such that she is eligible for release under § 3582(c)(1)(A). As the court finds no extraordinary and compelling reason, it is not necessary for the court to address the § 3553(a) factors.

Accordingly, the defendant's motion (ECF No. 784) is respectfully denied.

IT IS SO ORDERED.

August 4, 2023                                   Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge

10